IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATHANIEL WOODS, JR.,

    Plaintiff,

v.

BAYER HEALTHCARE LLC, Biological Products Division, a for profit business entity,

    Defendant.

No. C 05-02871 JSW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendant Bayer Healthcare LLC ("Bayer"). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff brings suit against Bayer alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. (count one); retaliation – race – under 42 U.S.C. § 1981 (count two); hostile work environment – race – under 42 U.S.C. § 1981 (count three); race discrimination – promotion – under 42 U.S.C. § 1981 (count four); retaliation in violation of California Government Code § 12940(h)(1) (count five); hostile work environment under California Government Code § 12940(a) (count six); and violation of public policy under California Government Code §§ 12920 and 12940(a) (count seven).

1 Plaintiff was employed by Bayer in its Berkeley facility for approximately five years as
2 a laboratory technician. The main pharmaceutical product manufactured at Bayer's Berkeley
3 facility is Kogenate FS, a clotting agent principally used by hemophiliacs to help clot their
4 blood. (*See* Declaration of Gustavo F. Mahler, Ph.D. ("Mahler Decl."), ¶¶ 3-4.) Bayer must
5 follow rigorous internal operating procedures as well as follow the mandates of Federal
6 Regulations. (*See id.*, ¶ 5.) Various steps in the production production process are documented
7 by Batch Production Records (BPRs) that are designed to align with particular standard
8 operating procedures and good manufacturing practices. (*Id.*) Bayer employees responsible for
9 the manufacturing processes are trained to follow these specific practices and to document the
10 steps in the BPRs. (*Id.*)

11 On or about July 13, 1998, Plaintiff began work as a Media Operator III, a Code 9
12 position. (*See* Declaration of Jerome Schreibstein ("Schreibstein Decl."), Ex. A (Woods
13 Deposition) at 23:14-21; 43:4-6; Declaration of Sherri O'Driscoll ("O'Driscoll Decl."), ¶ 7.)
14 Plaintiff worked in the Media Department for approximately two years and worked in the
15 graveyard, swing and day shifts. (*See* O'Driscoll Decl., ¶ 7.) Plaintiff was provided with initial
16 training in Bayer's required standard operating procedures and the completion of BPRs. (*See*
17 *id.*) On or about February 16, 1999, Plaintiff received promotion to Media Operator II, Code
18 10, retroactive to January 13, 1999. Then in approximately June 2000, Plaintiff transferred to
19 the Fermentation Department, working the day shift. (*See id.*, ¶ 8.)

20 On or about November 1, 2000, Plaintiff enrolled in Silicon Valley College to study
21 computers and Bayer reimbursed him for the costs of his education. (*See* Schreibstein Decl.,
22 Ex. A at 48:6-49:1; 50:4-11; Ex. 8.) In approximately May 2001, Plaintiff switched to the
23 graveyard shift in order to accommodate his full-time school schedule and to give him
24 opportunities to pursue training in fermentation. (*See id.*, Ex. A at 42:23-43:3, 50:4-52:18;
25 Declaration of John Wong ("Wong Decl."), ¶ 3.) In the Spring of 2002, Plaintiff requested and
26 subsequently received a transfer back to the day shift to accommodate his new school schedule
27 at the California Institute of Integral Studies. (*See* Schreibstein Decl., Ex. A at 65:3-66:7;
28 O'Driscoll Decl., ¶ 9; Wong Decl., ¶ 4.) Additionally, Plaintiff received a special

accommodation for his school schedule and was able to straddle two shifts, but was only able to perform tasks without consistent supervision and tasks to prepare the next shift, namely starting the daily checklist and cleaning equipment. (*See* Schreibstein Decl., Ex. A at 79:1-79:19, 81:10-15, 84:3-87:2; O'Driscoll Decl., Ex. D; Wong Decl., ¶ 4.) During this time and until his resignation, John Wong acted as Plaintiff's day shift supervisor. Upon review of Plaintiff's personnel file at the time of his transfer, Mr. Wong determined that he should have been advanced to Code 11 earlier and effected an advancement retroactive to July 23, 2001. (Wong Decl., ¶ 6.)

At Bayer, code advancements for production worker jobs are premised on both "time in job" and "proficiencies." (*See* Mahler Decl., ¶ 9; O'Driscoll Decl., ¶ 4; Declaration of Jian Zhang ("Zhang Decl."), ¶6; Schreibstein Decl., Ex. A at 43:21-44:8.) The time in job requires that an employee have a certain minimal amount of time in the job at the preceding code level before he is eligible for advancement to the next code level. (*See* Mahler Decl., ¶ 9; O'Driscoll Decl., ¶ 4; Zhang Decl., ¶ 6.) Advancement to Code 12 requires 24 months of merited job performance in a Code 11 position. (*See id.*) Proficiency requires that the production employee has completed the required training and/or qualification on the attendant standard operating procedures and BPRs as necessary for the specific code advancement. (*See* Mahler Decl., ¶ 10; Zhang Decl., ¶ 7.) It is, in large part, the employee's responsibility to take the initiative to seek out training opportunities. (*See* Zhang Decl., ¶ 8; O'Driscoll Decl., ¶ 5; Schreibstein Decl., Ex. A at 44:15-20.) Once a production worker has demonstrate time worked and sufficient proficiency, he is eligible for code advancement and the supervisor executes a code advancement form which is forwarded to the Human Resources Department for review and ultimate approval. (*See* O'Driscoll Decl., ¶ 6.)

Under certain circumstances in the past, Bayer recognized that employees may also be advanced to the next code based upon a demonstration of exceptional circumstances. (*See id.*, ¶ 4.) In Mr. Wong's shift, two individuals (one Asian American and one Caucasian) were advanced due to gaining proficiencies early. (*See* Wong Decl., ¶ 7.) In another shift, one African American and one African (black) employee were granted time waivers under

3

1 exceptional circumstances and granted code advancement to Code 12 for achieving
2 proficiencies early. (*See* O'Driscoll Decl., ¶ 14, Ex. D.) Nevertheless, upon investigation of
3 Plaintiff's EEOC complaint in July 2003 charging lack of training opportunities, Bayer
4 determined that, to be cautious, code advancement in the Media/Fermentation departments
5 would no longer be premised on exceptional circumstances or waiver of the time in job
6 requirement. (*See id.*; Mahler Decl., ¶ 16.)

7 Plaintiff contends that there were several instances in which his supervisor, Mr. Wong,
8 demonstrated his racial bias toward Plaintiff. Plaintiff states that he interpreted a comment from
9 Mr. Wong regarding whether his heart monitor received AM or FM stations as racially
10 motivated. (*See* Schreibstein Decl., Ex. A at 101:9-102:21; Declaration of Nathaniel Woods, Jr.
11 ("Woods Decl."), ¶ 28.)[1] In addition, Plaintiff states that when he informed his supervisor that
12 he was experiencing heart palpitations, Mr. Wong responded that it must have been related to
13 Plaintiff's use of drugs. (*See* Schreibstein Decl., Ex. A at 102:22-103:7; Woods Decl., ¶ 27.)
14 Plaintiff also indicates that he interpreted comments from non-supervisors regarding his lack of
15 proficiency and overall ability as driven by racial animus. (*See* Schreibstein Decl., Ex. A at
16 55:9-24; 56:24-57:25, 63:19-64:10, 105:15-106:1; Woods Decl., ¶¶ 29, 30, 33.)

17 Plaintiff contends that he was subject to such pervasive harassment as to require him to
18 take a medical leave of absence beginning June 30, 2003. (*See* Schreibstein Decl., Ex. A at
19 115:15-25, 134:5-8.) Plaintiff filed a workers' compensation claim regarding his heart
20 palpitations which he attributed to job stress. (*See id.*) The claim was denied as not arising or
21 occurring in the course of Plaintiff's employment and Plaintiff did not challenge that decision.
22 (*See id.* at 136:12-137:25, Ex. 14-15; O'Driscoll Decl., ¶ 12.) Plaintiff and his physicians
23 requested that he return to work with a different supervisor and in a different building, and
24 during a shift to accommodate his school schedule. After a suitable position was secured,
25 Plaintiff decided it was in his best interest to resign from Bayer on May 21, 2004.

26
27
28 [1] Bayer filed a myriad of objections to the Declaration of Nathaniel Woods, Jr. However, the evidence Bayer objected to was not necessary to the resolution of this motion. Therefore, the Court need not rule on the admissibility of such evidence at this time.

4

(*See* Schreibstein Decl., Ex. A at 150:20-167:24, Exs. 25-44; O'Driscoll Decl., ¶ 12, Exs. B, C; Woods Decl., ¶ 34.)

There is no evidence in the record indicating that any effort initiated by Plaintiff to receive additional training was refused. Further, the evidence in the record indicates that Plaintiff was not advanced to Code 12 because he did not have the required time in the job (two years in the Production Technician, Code 11 position) or the required proficiencies. Plaintiff was given a list of proficiencies required for advancement and failed to fulfill those requirements. (*See* Zhang Decl., ¶ 11, Exs. A and B.)

The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

**A.     Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving

party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      Plaintiff's Claims for Race Discrimination Do Not Survive Summary Judgment.**

Plaintiff brings his first, fourth and seventh claims for race discrimination and contends that Bayer failed to promote him based on his membership in a protected class. Plaintiff alleges that he was denied advancement to a Code 12 position because of his race. In order to make a claim for discrimination, Plaintiff must establish that he suffered an adverse employment action that was motivated by intentional discriminatory animus. *See, e.g., Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 353-58 (2000). The proper legal framework for determining whether Plaintiff's claim should survive summary judgment is the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

First, Plaintiff must establish a prima facie case of discrimination. *See id.*; *Guz,* 24 Cal.4th at 351-54. Whether Plaintiff can meet his burden to establish a prima facie case of discrimination is a matter of law to be determined by the court. *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its

6

employment decision. Then, in order to prevail, Plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision was a pretext for another, discriminatory motive. *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff may establish a prima facie case of discrimination by demonstrating that (1) he belongs to a statutorily protected class; (2) he applied for and was qualified for an available position; (3) he suffered an adverse employment decision; and (4) similarly situated individuals not in the protected class were treated more favorably. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). The only significant difference in the FEHA analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the first three elements, demonstrate some other circumstances that suggests discriminatory motive. *See, e.g., Guz*, 24 Cal.4th at 355.

If Plaintiff succeeds in establishing a prima facie case, the burden of production then shifts to Bayer to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See McDonnell Douglas*, 411 U.S. at 802. If Bayer does so, Plaintiff must demonstrate that Bayer's articulated reason is a pretext for unlawful discrimination by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff's evidence must be both specific and substantial to overcome the legitimate reasons set forth by the employer. *Aragon v. Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

### 1. Prima Facie Case.

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an easy one to satisfy, Plaintiff has failed to do so. Although Plaintiff's race makes him a member of a protected class and his failure to be advanced may qualify as an adverse employment

7

1  action, he fails to satisfy the other two prongs of the test; that is, to demonstrate that he was

2  qualified for the position and that other, similarly situated individuals not in the protected class

3  were treated more favorably.[2]

### a. Plaintiff has failed to demonstrate that he was qualified for the position.

There is simply no evidence in the record that Plaintiff was qualified for advancement. Plaintiff cannot dispute that he did not acquire the requisite time or proficiency to advance to Code 12. In addition, Plaintiff was given explicit instructions on what was required for advancement and he never completed the specified items. Plaintiff was not technically eligible for advancement, even under the exceptional circumstances exception, because he failed to demonstrate proficiencies in the required areas. Due in large part to his school schedule and the accommodations to his schedule, Plaintiff did not initiate receiving further training opportunities and did not achieve the requisite qualifications for advancement.

Based on this evidence, the Court finds that Plaintiff has failed to demonstrate that there is a genuine dispute of material fact regarding his qualification for the position. Therefore, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination based on the demonstrating Plaintiff was qualified for the position. *See Hicks,* 509 U.S. at 506.

### b. Plaintiff has failed to demonstrate that other, similarly situated individuals were treated more favorably.

In addition, Plaintiff has failed to raise a dispute of fact regarding whether other employees outside of his protected class were treated more favorably. In this regard, Plaintiff merely maintains that other people in his shift were advanced under the exceptional circumstances exception to the time in job requirement, and argues that therefore Bayer's failure to advance him must be based upon his race. However, there is no evidence that these

---

[2] Bayer contends that Plaintiff has failed to allege an adverse employment action because he failed to apply for a Code 12 advancement and was not eligible for such advancement, and further, he resigned a year after his complaints and was repeatedly granted accommodations for his unique schedule requests, therefore obviating any causal nexus for a claim of constructive discharge. (Motion at 17-18.) For purposes of this motion, however, the Court will consider Plaintiff's claim of lack of advancement as an adverse employment action and consider the issues regarding his eligibility as part of its analysis regarding his qualifications.

8

individuals were similarly situated. First, the evidence in the record demonstrates that the two individuals under Mr. Wong's supervision had achieved proficiencies which qualified them for advancement. Second, there is evidence in the record which demonstrates that other African American and African technicians were advanced under the exceptional circumstances exception. The undisputed evidence indicates that Plaintiff was not qualified under either the strict qualifications for Code 12 advancement nor was he considered exceptionally proficient under the exception.

Because there is no evidence that other, similarly situated individuals were treated more favorably based upon their race, the Court finds that Plaintiff has not met his burden to demonstrate the existence of a prima facie case of race discrimination based on this factor. Therefore, summary judgment on Plaintiff's claim is properly granted.

However, even assuming *arguendo* that Plaintiff had established a prima facie case of race discrimination, summary judgment is still warranted because Bayer has asserted a legitimate, nondiscriminatory reason for Plaintiff's lack of advancement, and Plaintiff has failed to demonstrate the reason is merely pretext.

### 2. Bayer Has Demonstrated Legitimate Business Reasons for Failing to Advance Plaintiff.

Even if Plaintiff could successfully establish a prima facie case of race discrimination, the undisputed facts demonstrate that Bayer had legitimate business reasons to decide not to advance him to Code 12. There is no dispute that Plaintiff did not obtain the required Code 12 technical proficiencies. Further, he did not accumulate the requisite time in his Code 11 position for advancement, and he failed to qualify for an exception in the time requirement because there was no showing that his proficiency was otherwise extraordinary. The articulated reasons for Bayer's failure to advance Plaintiff was based on the application of objective, lawful criteria for advancement and were not related to Plaintiff's race.

### 3. Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because Defendant presents evidence demonstrating a legitimate nondiscriminatory reason for the termination, Plaintiff bears the burden of demonstrating that Defendant's articulated reason is pretextual. Plaintiff may do so "either [1] directly by persuading the court

9

1 that a discriminatory reason more likely motivated the employer or [2] indirectly by showing
2 that the employer's proffered explanation is unworthy of credence." *Merrick v. Farmers Ins.*
3 *Group,* 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

4 First, the Court has already determined that the undisputed evidence demonstrates that
5 Plaintiff failed to qualify for the advancement. Plaintiff fails to refute Bayer's legitimate non-
6 discriminatory reasons for failing to promote him. Plaintiff's theory of the case is that other
7 individuals without the requisite formal requirements received advancements, and therefore the
8 only reason Plaintiff did not receive advancement was because of his race.

9 Plaintiff also contends that there were comments that intimated race discrimination.
10 First, the specific comments Plaintiff complains of regarding his heart monitor receiving radio
11 signals or being necessitated by use of drugs do not, on their face, imply racial animus. The
12 alleged comments regarding Plaintiff's proficiency at his job are similarly not, on their face,
13 racially discriminatory. However, even assuming there was some racial content to the
14 comments, they constitute mere stray remarks. *See Mondero v. Salt River Project*, 400 F.3d
15 1207, 1213 (9th Cir. 2005) (holding that stray remarks not acted upon or communicated to a
16 decision maker are insufficient to establish pretext); *see also Merrick v. Farmers Ins. Group,*
17 892 F.2d 1434, 1438-39 (9th Cir. 1990) (same).

18 Plaintiff also contends that he may infer race discrimination from the fact that he was the
19 only African-American on Mr. Wong's shift. The Court is not persuaded by Plaintiff's
20 argument that the Court should infer racial animus in Mr. Wong's specific shift based on his
21 failure to advance Plaintiff. Mr. Wong's shift fails to constitute a statistical sample. The Ninth
22 Circuit has held that a sampling of such a small universe detracts from the value of statistical
23 evidence. *See Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 220
24 (9th Cir. 1976) ("statistical evidence derived from an extremely small universe . . . has little
25 predictive value and must be disregarded.") (citations and internal quotations omitted); *see*
26 *also Sengupta v. Morrison-Knudsen Co.,* 804 F.2d 1072, 1076 (9th Cir. 1986) (finding that a
27 department of 28 employees was too small for statistical analysis of race under Title VII).
28

Therefore, the Court finds that Plaintiff has failed to set forth any direct or indirect evidence to persuade the Court that a discriminatory reason more likely motivated the employer or any indirect evidence tending to demonstrate that the employer's proffered explanation is unworthy of credence. *See Merrick,* 892 F.2d at 1437. Having failed to raise a disputed fact demonstrating that Bayer's articulated reason for termination is pretextual, either directly or indirectly, the Court grants summary judgment on Plaintiff's first, fourth and seventh claims for discrimination based on race.

**C.     Plaintiff's Claims for Hostile Work Environment Harassment Do Not Survive Summary Judgment.[3]**

In his third and sixth causes of action, Plaintiff also makes claims for relief for hostile work environment. To prevail upon a hostile work environment claim, Plaintiff must demonstrate that he was subject to unwelcome race-based harassment that was so pervasive as to alter the condition of his employment and create an abusive working environment. *See Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989). Whether the harassment complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances, including: (1) the nature of the unwelcome acts or words; (2) the frequency of such encounters; (3) the total number of days over which all of the offensive conduct occurred; and (4) the context in which the harassing conduct occurred. *Id.* at 609-610.

To be actionable under FEHA, the harassment must be sufficiently severe or pervasive as to alter the conditions of employment and create an abusive working environment, and cannot be isolated, occasional, sporadic or trivial. *Id.* Plaintiff must demonstrate a concerted pattern of harassment of a repeated and routine nature that would interfere with a reasonable employee's work performance and would seriously affect the psychological well-being of a

---

[3] Bayer contends that Plaintiff has failed to exhaust his administrative remedies for his claims of hostile work environment harassment based on race due to the fact that the claims did not appear on the face of Plaintiff's EEOC charge. However, because there is some evidence in the record demonstrating that the EEOC may have been aware of the basis for these claims because more detail was provided in Plaintiff's accompanying questionnaire and a broad investigation *may* have uncovered similar facts, the Court will address the merits of Plaintiff's claims. (*See* Declaration of Charles Stephen Ralston ("Ralston Decl."), Ex. I.)

11

reasonable employee. *Id.* Isolated or stray comments over a period of years are insufficient to support such a claim. *Id.* at 611-12. Simple or occasional teasing will not be considered conduct so extreme as to amount to a change in the terms and conditions of employment. *See Farraggher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Because the Court has already found that the few isolated comments made in Plaintiff's workplace do not relate to his race, the Court similarly finds that the conduct does not amount to a concerted pattern of repeated and routine harassment based on Plaintiff's race. There is no evidence in the record to sustain Plaintiff's claim that any conduct complained of was so extreme, severe and pervasive as to change the terms and conditions of Plaintiff's employment. Therefore, the Court GRANTS summary judgment on Plaintiff's third and sixth claims that he was subjected to hostile work environment harassment.

**D.  Plaintiff's Claims for Retaliation Do Not Survive Summary Judgment.**

In his second and fifth causes of action, Plaintiff also makes claims for relief for retaliation. Similar to elements of establishing discrimination, the elements of a retaliation claim "require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant articulate a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext for the illegal [action]." *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). In order to establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *Id.; see also Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002) (same).

Plaintiff maintains that he engaged in protected activity when he spoke to Mr. Wong and Dr. Mahler about his belief that he was subjected to racism while working at Bayer and when he filed a complaint with the EEOC. (Opp. Br. at 19-20.) All of these activities occurred in Summer of 2003. (*See* Woods Decl., ¶¶ 24, 33; Complaint at ¶ 16.) Plaintiff contends that the long delays in adjusting his work schedule constitute an adverse employment action, eventually leading to his resignation. However, the delays in adjusting Plaintiff's schedule to fit the

12

1  requirements of his school commitments occurred in Spring 2002.  Therefore, any claim that he
2  was subject to adverse employment action as a result of his protected activities is nonsensical.
3  Temporal nexus, necessary to create an inference of retaliation, requires that the protected
4  activity occur before the ostensible adverse employment action.  *See, e.g., Flair v. North*
5  *American Watch Corp.*, 3 Cal. App. 4th 467, 478 (1992).  To the extent Plaintiff claims that his
6  complaints and alleged protected activity ultimately caused delays in placing Plaintiff in a
7  comparable position after his sick leave, and eventually led to his resignation, the long passage
8  of time between the alleged protected acts and the delays in placement preclude a finding of
9  causal nexus.  *See id.*  Further, neither the alleged delays (of mere weeks) in finding proper
10 placement nor Plaintiff's eventual resignation do not constitute adverse employment action.[4]
11 Therefore, Plaintiff fails to make out a prima facie case of retaliation.

12 However, even if Plaintiff were able to make out a prima facie case, the Court finds that
13 Bayer has articulated a legitimate, nonretaliatory explanation for its acts, and Plaintiff cannot
14 show that Bayer's proffered explanation is merely a pretext for illegal action.  Bayer has
15 articulated a legitimate basis for failing to advance Plaintiff due to his lack of qualification.
16 Plaintiff has failed to demonstrate that Bayer's proffered reason is mere pretext for unlawful
17 discriminatory or retaliatory motive for the same reasons he has failed to so demonstrate for his
18 claims of race discrimination and because he lacks even temporal proximity to create an
19 inference of retaliatory motive.

20 **E.    Plaintiff's Claim for Constructive Discharge Does Not Survive Summary Judgment.**

22 Lastly, Plaintiff also mentions in his complaint that Bayer intentionally retaliated against
Plaintiff by "constructively discharging him" (*See* Complaint at ¶ 30.)  A constructive discharge
occurs when, looking at the totality of circumstances, a reasonable person in the employee's
position would have felt that he was forced to quit because of intolerable and discriminatory
working conditions.  *Turner v. Anheuser-Busch, Inc.* 7 Cal.4th 1238, 1246 (Cal. 1994) (citing
*Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987), quoting *Satterwhite v. Smith*,

---

[4] *See* Section E, *supra*.

13

744 F.2d 1380, 1381 (9th Cir. 1984)).  The standard by which a constructive discharge is determined is an objective one – the question is "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit."  *Id.* at 1248 (citing *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 212 (1993)).

The evidence in the record demonstrates that Bayer offered Plaintiff, following his return from medical leave, a position with another supervisor and in another facility, with the same pay and in accordance with Plaintiff's preferred schedule.  Plaintiff concedes that the offer was "an appropriate position" and he maintains that he refused the position because it was "not in [is] best interest." (Woods Decl., ¶ 34.)  On this record, the Court finds that the record of undisputed facts precludes a finding of constructive discharge.

## CONCLUSION

For the foregoing reasons, Defendant Bayer's motion for summary judgment is GRANTED.  Judgment shall be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**

Dated: July 14, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

14